IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RAYMOND HOPP,

                Plaintiff,

  v.

MJC AMERICA, LTD., GREE USA, INC.,
HONG KONG GREE ELECTRIC APPLIANCE SALES,
LTD., GREE ELECTRIC APPLIANCES, INC., OF
ZHUHAI, and MENARD, INC.,

                Defendants.

OPINION and ORDER

23-cv-325-jdp

---

This case arises out of a fire that occurred in plaintiff Raymond Hopp's home in 2020. Hopp alleges that the fire was caused by a dehumidifier sold by defendant Menard, Inc. and manufactured by Gree Electrical Appliances, Inc. of Zhuhai or one of three subsidiaries, which are also named as defendants.

Hopp alleges that the dehumidifier had a defect that caused it to spontaneously combust, causing hundreds of thousands of dollars of damage to his home. He asserts claims for negligence and strict liability against Gree and its subsidiaries. He sues Menard under Wis. Stat. § 895.047(2)(a)2, which imposes strict liability on a seller if "neither the manufacturer nor its insurer is subject to service of process within this state." Hopp is a Minnesota citizen, the other defendants are citizens of other states or countries, and it is reasonable to infer that

more than $75,000 is in controversy, so the court may exercise jurisdiction under 28 U.S.C. § 1332.[1]

Both sides move for partial summary judgment on the issue whether Hopp may recover damages for any injuries for which plaintiff's insurer, American Family, has already provided full compensation to Hopp. Hopp also seeks summary judgment on the issue whether defendants are strictly liable under Wis. Stat. § 895.047.

For the reasons below, the court concludes that American Family is not subrogated to Hopp's rights, so any payments American Family made to Hopp have no bearing on Hopp's recovery in this case. The court will grant summary judgment to Hopp and deny summary judgment to defendants on that issue. The court will also deny Hopp's summary judgment motion on the issue whether defendants violated § 895.047 because Hopp did not properly support his motion.

## ANALYSIS

The parties raise two issues in their motions for partial summary judgment. The first issue is about the scope of Hopp's right to collect damages. Defendants contend that Hopp's insurer, American Family, is subrogated to Hopp's rights, so Hopp can recover only the deductible he paid American Family and any other out-of-pocket expenses. Hopp says that American Family has no right of recovery against defendants and his claim belongs to him

---

[1] Hopp states in his proposed findings of fact that he is a "resident" of Minnsota. Dkt. 69, ¶1. It is well established in this circuit that citizenship is not determined by residence; what matters is domicile, which is where the party intends to remain for the foreseeable future. *Myrick v. WellPoint, Inc.*, 764 F.3d 662, 664 (7th Cir. 2014). But Hopp testified in his deposition that he has lived at the same Minnesota address for 57 years, *see* Dkt. 43, at 9:19–22, so it is reasonable to infer that he is domiciled in Minnesota.

alone. The second issue is whether Hopp has proven as a matter of law that defendants are strictly liable for the damage to Hopp's property. Both sides assume that Wisconsin law governs both issues, so the court will do the same. *See RLI Insurance Company v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008).[2]

The question on summary judgment is whether there are any genuine factual disputes that could make a difference to the outcome of the case, or, stated another way, whether a reasonable jury could find for the nonmoving party, after drawing all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC,* 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The court concludes that Hopp is entitled to summary judgment on the subrogation issue, but he has not shown that he is entitled to summary judgment on the liability issue.

**A. Subrogation**

The parties' primary dispute is whether Hopp or American Family has the right to sue defendants for the property damage to Hopp's home. Resolving that dispute requires an analysis of the law governing the collateral source rule and subrogation.

---

[2] In his brief in opposition to defendants' motion for partial summary judgment, Hopp argues that Minnesota law applies to the question whether there is a cap on punitive damages. *See* Dkt. 71. Hopp continues to rely on Wisconsin law for all other issues in both his opposition brief and reply brief, without addressing the discrepancy. The court need not resolve the discrepancy in this order because neither side fairly raised the issue of a damages cap in their summary judgment motions. If the parties dispute the choice-of-law question for trial, they will have to present that issue in a motion in limine. If Hopp believes that Minnesota law should apply to some issues and not others, he will have to explain why. If he intends to assert that Minnesota law should apply to all issues, he will have to explain why he is not barred under the doctrines of waiver or judicial estoppel from relying on Minnesota law when he relied on Wisconsin law in both his complaint and his motion for partial summary judgment.

Under the collateral source rule, "a plaintiff's recovery cannot be reduced by payments or benefits from other sources," including an insurer. *Orlowski v. State Farm Mut. Auto. Ins. Co.*, 2012 WI 21, ¶ 17, 339 Wis. 2d 1, 810 N.W.2d 775. But this changes when an insurer pays a claim pursuant to a subrogation agreement. In that situation, "the insurer takes over ownership of the right to seek recovery of [the paid] amount from the tortfeasor," and "[a]s a result, this right to subrogation trumps the collateral source rule." *Fischer v. Steffen*, 2010 WI App 68, ¶ 7, 325 Wis. 2d 382, 783 N.W.2d 889.

It is undisputed that American Family paid Hopp $256,682.95 for the damage caused by the fire, subject to a $1,000 deductible. But the parties dispute whether American Family has subrogation rights.

Subrogation is not automatic when an insurer pays a claim. *Jindra v. Diederich Flooring*, 181 Wis. 2d 579, 594 511 N.W.2d 855, 859 (1994). Rather, subrogation can occur in one of two ways, as a matter of contract or through principles of equity. *Dufour v. Progressive Classic Ins. Co.*, 2016 WI 59, ¶ 15, 370 Wis. 2d 313, 881 N.W.2d 678 (2016).

Defendants contend that American Family obtained subrogation rights through Hopp's insurance policy, and they cite the following provision:

> Subrogation: An insured may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us. If an assignment is sought, an insured must sign and deliver all related papers and cooperate with us.

Dkt. 72, ¶ 117; Dkt. 58-2, at 17. This provision states that American Family "may require" an insured to assign his rights, but it does not say that subrogation is triggered automatically, so the contract itself did not create a subrogation right.

4

Defendants do not cite a document in which American Family required Hopp to assign his rights of recovery. Instead, defendants point to a September 2022 document signed by Hopp called "Lien Acknowledgement" in which Hopp "acknowledge[d]" two things:

> 1. American Family has a lien on any recovery that he may obtain from any liable third-party, up to $256,682.95; and
>
> 2. He will reimburse American Family up to the amount of its lien from any recovery he obtains from any third-party.

Dkt. 49-5.[3] Neither of those statements is an assignment of Hopp's right of recovery. Rather, the statements represent a promise by Hopp to reimburse American Family from any amount that *Hopp* recovers. So the document rests on an assumption that Hopp, not American Family, will seek recovery from defendants.

Defendants rely on one of the recitals in the lien acknowledgement: "Whereas, American Family's policy of insurance provides that American Family is subrogated to the rights of Raymond Hopp to the extent of its payments." *Id.* Hopp does not explain why the recital was included in the lien acknowledgment, but it does not matter. "[A] recital doesn't create rights; it is simply an interpretive tool for determining the intent of the parties." *Wisconsin Tech Sales, Inc. v. Tech Incorporated*, No. 21-cv-505-jdp, 2022 WL 1568890, at *4 (W.D. Wis. May 18, 2022). The recital in the lien acknowledgement is inconsistent with the plain language of the insurance policy, which does not state that "American Family is subrogated to the rights of Raymond Hopp." Rather, as already discussed, the policy gives American Family the *option* of requiring Hopp to assign his right of recovery. The recital is also inconsistent with the lien acknowledgement itself, which states that Hopp will "reimburse"

---

[3] Only Hopp signed the "lien acknowledgement," but both sides assume that the document is enforceable, so the court will do the same.

American Family. There would be no need to reimburse American Family if American Family were to seek recovery directly through its subrogated rights. A recital cannot overcome unambiguous language in an agreement, so the court must disregard the recital.

Even if the recital had legal effect, it would not matter because American Family has stated in two more recent documents that it is waiving any right to subrogation. First, in May 2023, American Family stated that it "assigns to Raymond Hopp whatever subrogation rights it may have arising out of his claim for benefits under his policy for damages caused by the November 28, 2020, fire at his house." Dkt. 32-2. Second, in July 2024, American Family stated the following about this lawsuit:

> 1. This present action may be pursued by Hopp, and in his name, both individually and as assignee of whatever rights American Family may have.
>
> 2. This action will include all insured and uninsured damages and claims arising from the fire.
>
> 3. American Family agrees to be forever bound by the results of this action.
>
> 4. American Family waives any rights to pursue any independent subrogation rights it may have outside of the above-proceeding against any of the parties in this litigation and agree not to pursue any separate litigation or assert any claims against the defendants as a result of the fire.

Dkt. 32-3.

Wisconsin law is clear that an "insurer may waive its right to subrogation, either by contract or by conduct inconsistent with the right of subrogation, and the waiver may be either express or implied." *Fischer*, 2010 WI App 68, at ¶ 9. After a waiver, the insurer, "has stepped back out of the insured's shoes and the right reverts to the insured," precluding the insurer from seeking relief against the tortfeasor. *Id.*

6

The documents cited above show unequivocally that American Family has waived any subrogation rights it may have had. "Where an insurer waives its subrogation rights, no subrogation exists, and the collateral source rule applies." *Id.* (internal quotation marks and alterations omitted). So Hopp is entitled to seek full recovery against defendants, without regard to any amount that American Family had paid Hopp. It will then be up to American Family to seek reimbursement from Hopp alone; it may not seek payment from defendants.

Defendants raise three other objections, but none are persuasive. First, defendants say that there was no waiver because "Hopp's policy with American Family does not include a reimbursement provision, and American Family did not elect an alternative to subrogation." Dkt. 77, at 4. This argument is based on *Jindra*, which held that an insurer waived its right to subrogation by entering into a reimbursement agreement with the insured. 511 N.W.2d at 857. Defendants do not identify any meaningful differences between the reimbursement agreement at issue in *Jindra* and Hopp's promise in this case to "reimburse American Family up to the amount of its lien from any recovery he obtains from any third-party." Dkt. 49-5. Regardless, *Jindra* did not hold that waiver occurs only in the context of a reimbursement clause. Rather, consistent with *Fischer*, the court held that "[o]ne may waive subrogation explicitly in writing, or one may be held to have waived subrogation by conduct." *Jindra*, 511 N.W.2d at 860. The documents American Family signed make it clear that it has waived its subrogation rights, and that is what matters under *Jindra* and *Fischer*.

Second, defendants rely on *Jindra* again, this time for the proposition that equitable subrogation can be imposed on an insurer, even if the insurer has waived its subrogation rights. But the portion of the decision that defendants cite was joined by only three of seven justices. The two concurring justices stated that the doctrine of equitable subrogation does not apply

7

"when the subrogee (the insurance company) has waived its subrogation rights, as it did in this case. The insurance company is protected as much as it wanted to be. The policyholder received just what he bargained for." *Jindra*, 511 N.W.2d at 866–67 (Abrahamson, C.J., concurring). If the concurring opinion is controlling, there can be no equitable subrogation when the insurer waives its rights.

Even if the plurality opinion is controlling, the plurality suggested that there would be few instances in which equitable subrogation is appropriate after a waiver, and it rejected imposing equitable subrogation in that case. The plurality stated that "[t]here is no reason for imposing subrogation on a party when that party instead elects to rely upon a reimbursement clause in its policy or an agreement" and that imposing subrogation would "discourage early and contingent payments." *Id.* at 863. There was no inequity to the insurer because it could be made whole under the reimbursement clause, and there was no inequity to the tortfeasor because the waiver meant that the insurer could not sue the tortfeasor, so there would be no double recovery. *Id.* at 860.  That reasoning applies equally in this case.

Defendants say that other public policies support imposing equitable subrogation. Their main arguments are about the difference between the amount of the lien (approximately $257,000) and Hopp's own estimate of the cost of repair (approximately $209,000). Defendants say that American Family will be "unjustly enriched" because "the lien requires that Mr. Hopp reimburse American Family in excess of American Family's recovery if it were the named plaintiff in this lawsuit." Dkt. 48, at 17. Defendants also say that the lien is an attempt at an end run around the rule that indemnitors like insurance companies are not entitled to recover punitive damages because "Hopp can only satisfy his payment obligation under the lien acknowledgement if he recovers punitive damages." *Id.* at 16. But these are

8

arguments regarding why the *lien* is invalid, and that is an issue between Hopp and American Family. Defendants do not explain why the remedy for an inflated lien against the insured is to limit the insured's right to recover. In any event, defendants' arguments are misplaced because the lien is the same as the amount that American Family has already paid to Hopp, so there is no unjust enrichment.

When equitable subrogation applies, it generally does so because of a concern that the indemnitor will not be adequately compensated or there is a risk that the tortfeasor will be subject to claims from multiple parties for the same injury. *See Dufour,* 2016 WI 59, at ¶¶ 15–18 (discussing "equitable principles that may affect subrogation"). Neither of those concerns is present here: American Family's interests are protected by the lien acknowledgement, and defendants' interests are protected by the waiver. Defendants have failed to show that the court should impose equitable subrogation.

Defendants' third and last objection is another argument about the rule that a subrogee cannot recover punitive damages. *See American Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Systems, Inc.,* 325 F.3d 924, 936 (7th Cir. 2003); *Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.,* 176 Wis. 2d 740, 773–74, 501 N.W.2d 788, 801. Specifically, defendants say that American Family's May 2023 document assigning its subrogation rights to Hopp necessarily excluded the right to recover punitive damages because American Family could not assign a right it did not have. This argument fails because the court has determined that American Family never obtained subrogation rights in the first place. Rather, the right to seek recovery against defendants has remained with Hopp. The parties agree that property owners can recover punitive damages in a products liability case under some circumstances.

Even if defendants were correct that American Family needed to reassign its subrogation rights back to Hopp, defendants' argument is self-defeating. If defendants are correct that American Family could not obtain the right to sue for punitive damages, that suggests the right remained with Hopp. Defendants do not explain how Hopp could forfeit the right to recover punitive damages by assigning it to American Family, but he could not reacquire the right when American Family assigned subrogation rights back to Hopp. Under defendants' view, a tortfeasor could escape liability for punitive damages in any case involving subrogated rights, even if such damages would otherwise be available. Defendants cite no authority for that view, and it is inconsistent with one of the primary purposes of subrogation, which is "to place the loss ultimately on the wrongdoers." *Cunningham v. Metropolitan Life Ins. Co.*, 121 Wis. 2d 437, 444–45, 360 N.W.2d 33 (1985). Defendants identify no public policy that is served by extinguishing a property owner's right to recover punitive damages in a case involving subrogation.

The bottom line is that American Family never acquired subrogation rights, and, even if it did, it waived those rights, so the collateral source rule applies, and Hopp may seek full recovery against defendants, including punitive damages. The court does not determine in this opinion whether Hopp can meet the standard for punitive damages.

**B.  Liability**

Hopp contends that he is entitled to summary judgment on the issue whether defendants violated Wisconsin's strict-liability statute, Wis. Stat. § 895.047. "Where, as here, the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor

of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. National Retirement Fund*, 778 F.3d 593, 601–02 (7th Cir. 2015).

To hold a manufacturer liable under § 895.047, the plaintiff must prove five things:

(1) the product contains a manufacturing defect or a design defect or it does not provide adequate warnings or instructions;

(2) the product was unreasonably dangerous to persons or property because of the defect;

(3) the product was defective when it left the control of the manufacturer;

(4) no substantial changes were made to the product after it left the control of the manufacturer;

(5) the defect was a cause of the plaintiff's damages.

Wis. Stat. § 895.047(1); *Murphy v. Columbus McKinnon Corporation*, 2022 WI 109, ¶¶ 30–40, 405 Wis. 2d 157, 982 N.W.2d 898. A seller may be held liable for strict liability if "[t]he claimant proves by a preponderance of the evidence that neither the manufacturer nor its insurer is subject to service of process within this state," along with all the elements in § 895.047(1). Wis. Stat. § 895.047(2)(a)2.

Hopp did not allege in his complaint that defendants failed to provide adequate warnings or instructions. Instead, he alleged that "[t]he dehumidifier contained one or more design and/or manufacturing defects." Dkt. 1, ¶ 97. The statute defines both types of defects:

> A product contains a manufacturing defect if the product departs from its intended design even though all possible care was exercised in the manufacture of the product. A product is defective in design if the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the manufacturer and the omission of the alternative design renders the product not reasonably safe.

11

Wis. Stat. § 895.047(1)(a).

Hopp has not shown that he is entitled to judgment as a matter of law under the above standard for two reasons. First, in contending that the dehumidifier was defective, he does not apply the statutory standard identified above for a manufacturing or design defect. Instead, he relies on an outdated common-law standard, which differs from the statutory standard. *See* Dkt. 39, at 6 (citing *Godoy ex rel. Gramling v. E.I. du Pont de Nemours & Co.*, 319 Wis. 2d 91, 123 (2009) ("'Defective,' for purposes of the consumer contemplation test, means that the product is 'in a condition not contemplated by the ultimate consumer and unreasonably dangerous to that consumer.'"). The court will not make Hopp's argument for him.

Second, Hopp proposed no findings of fact about any of the elements of his strict-liability claim. *See* Dkt. 38. Under this court's procedures, "[t]he statement of proposed findings of fact must include all facts necessary to sustain the motion for summary judgment." Motions for Summary Judgment I.B.2, *attached* to Dkt. 22. "The court will not search the record for evidence." *Id.*, I.C.1; *see also Diadenko v. Folino*, 741 F.3d 751, 756–57 (7th Cir. 2013). Without proposed findings of fact supporting his claim, Hopp cannot prevail as a matter of law, so the court will deny this aspect of Hopp's summary judgment motion.

ORDER

IT IS ORDERED that:

1. Plaintiff's motion for partial summary judgment, Dkt. 37, is GRANTED in part and DENIED in part. Plaintiff is granted summary judgment on the issue whether plaintiff's right of recovery is limited by American Family's subrogation rights.

Plaintiff is denied summary judgment on the issue whether defendants violated Wis. Stat. § 895.047.

2. Defendants' motion for partial summary judgment, Dkt. 46, is DENIED.

Entered January 27, 2025.

                                         BY THE COURT:

                                         /s/

                                         _____
                                         JAMES D. PETERSON
                                         District Judge